IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES MARK MCDANIEL, JR., and <br> C. RICHARD EPES, <br>       Plaintiffs, <br> v. <br> ALCON LABORATORIES, INC., <br>       Defendant. | 1:06CV472 |

MEMORANDUM OPINION

Beaty, Chief Judge.

This case, presently before the Court as a diversity action, involves claims under North Carolina law alleging tortious interference with a contract and tortious interference with a prospective economic advantage. The claims are brought by Plaintiffs, James Mark McDaniel, Jr. ("McDaniel") and C. Richard Epes ("Epes") (together "Plaintiffs") against Defendant Alcon Laboratories, Inc. ("Alcon" or "Defendant"). On April 30, 2007, Plaintiffs' claim for tortious interference with a prospective economic advantage was dismissed with consent [Document #31]. Defendant has filed a motion for summary judgment [Document #43] seeking judgment in its favor as to the Plaintiffs' only remaining claim, tortious interference with a contract. For the reasons discussed below, Defendant's motion for summary judgment [Document #43] will be granted, and this action will be dismissed with prejudice.

I.  FACTUAL BACKGROUND

Since 2003, Alcon has been involved in extensive litigation proceedings in the Middle District of North Carolina, in Texas state court, and in federal bankruptcy court with EBW Laser, Inc. ("EBW"). Plaintiffs in the present case were principals, shareholders, and guarantors of EBW's corporate debts and obligations. The litigation between Alcon and EBW grew out of EBW's use of 11 LADARVision® ophthalmic surgical systems (the "systems") which were manufactured by Alcon. EBW, who had leased the systems from Fleet Healthcare Finance ("Fleet") and U.S. Bancorp ("U.S. Bank"), and subsequently placed the systems with various physicians throughout the country, was also obligated to pay Alcon certain monthly license and procedural fees for use of the systems. When EBW allegedly discontinued paying the required fees to Alcon, Alcon advised EBW that it would remotely deactivate the systems as a result of non-payment, rendering the systems in the various physicians' offices non-operational. Although Alcon never deactivated the systems, Alcon filed suit against EBW in Texas state court in April 2003 for injunctive relief and over $1.7 million in license and procedural fees that EBW had allegedly failed to pay for use of the systems.

In May 2003, EBW filed suit against Alcon in North Carolina state court claiming tortious interference with contracts between EBW and a number of doctors and clinics who had obtained the systems from EBW. That action was later removed to the Middle District of North Carolina and was eventually reported settled in 2005. As part of the 2005 settlement, EBW stipulated to a consent judgment against it in the Texas state court and global resolution of all

2

claims against Alcon, including any and all claims, counterclaims, cross claims, third party claims and appeals arising out of the litigation between the parties pending in this Court as well as Texas state court.[1]

Plaintiffs then filed this suit in this Court against Alcon alleging that Alcon: (1) tortiously interfered with their contractual relationship with Fleet and U.S. Bank; and (2) tortiously interfered with their alleged prospective relationships with certain third party physicians. Subsequently, Plaintiffs indicated that they wished to dismiss with prejudice their second cause of action, tortious interference with a prospective economic advantage, and the Defendant agreed. Therefore, the Court dismissed, with consent, Plaintiffs' second cause of action. Thus, Plaintiffs' only remaining claim against Alcon is their cause of action for tortious interference with a contract.

With regard to Plaintiffs' tortious interference with a contract claim, Plaintiffs allege that on May 7, 2003, Jeff Roper ("Roper"), an employee of Alcon acting on behalf of Alcon, made telephone calls to Fleet and U.S. Bank, who were creditors of EBW and of Plaintiffs as guarantors of EBW's debts and obligations. Alcon had no business relationship with Fleet or U.S. Bank prior to the contact by Jeff Roper. In contacting the financial companies whom Alcon believed had an interest in the systems which were becoming the subject of numerous litigation proceedings, Roper learned that "Fleet and U.S. Bank have personal guarantees (PG's) from

---

[1] The 2005 settlement also disposed of another lawsuit which was then pending in this Court involving Sheri Rowan, a physician who had purchased a LADARVision system from EBW, as Plaintiff, EBW and Alcon as a third-party defendant.


McDaniel and Dr. Epes." (Pls.' Ex. A). Alcon contends that Roper's purpose in contacting Fleet and U.S. Bank was "because Alcon believed that those financial institutions may have a legitimate and protected legal and/or financial interest in the relevant LADARVision Systems that may have been affected by EBW's and/or Plaintiffs' failure to pay money that was due and owed to Alcon for the use of LADARVision Systems." (Pls.' Ex. F at 7) Plaintiffs maintain, however, that Alcon had no legitimate business reason to contact Fleet and U.S. Bank. Plaintiffs argue that following Roper's telephone call to Fleet and U.S. Bank, EBW's business relationship with the financial companies deteriorated. On May 8, 2003, EBW notified U.S. Bank that due to litigation with Alcon, Alcon had "made it impossible" for EBW to pay U.S. Bank in the future. On May 13, 2003, U.S. Bank notified EBW that EBW was in default for the total past due amount of $49,897.91, and subsequently called in the total remaining amount due on the loan. Fleet, likewise alleging that EBW had defaulted on certain payments due under their agreement, instituted suit against EBW in August 2003 to repossess the systems and to collect the full amount due and owing under the lease agreement. Plaintiffs argue that because of Roper's contact with Fleet and U.S. Bank, "the loans were suddenly called in instead of extended or modified as had been offered at previous times." (Compl. ¶ 9) Plaintiffs contend that Alcon's actions in this regard constitute tortious interference with their contractual relationships with Fleet and U.S. Bank.

Plaintiffs further contend that they have incurred personal expenses in satisfaction of EBW's debts and obligations to Fleet and U.S. Bank as a direct result of the Defendant's conduct

4

as alleged in Plaintiffs' Complaint. In order to pay Fleet and U.S. Bank, Plaintiffs formed another corporation, NSite Management, LLC ("NSite"), which obtained a loan from FNB Bank ("FNB") in the amount of $2,145,000.00. Plaintiffs personally guaranteed the loan from FNB. NSite has made monthly payments to FNB under the loan agreement. Plaintiffs have not personally paid FNB in satisfaction of the loan.

Alcon has moved for summary judgment against Plaintiffs seeking dismissal of the tortious interference with a contract claim arguing that Plaintiffs: (1) lack standing to pursue their claim; and (2) have failed to produce evidence in support of essential elements of their claim, that is, that Fleet or U.S. Bank failed to perform under its contracts with EBW, and that Plaintiffs have suffered actual damages. The Court will now consider Defendant's motion for summary judgment presently before the Court.

II.     STANDARD OF REVIEW

The standard for granting summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). It is the moving party's burden to show that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. A fact is considered "material" if it "might affect the outcome of

5

the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

When considering a motion for summary judgment, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." Bailey v. Blue Cross & Blue Shield, 67 F.3d 53, 56 (4th Cir. 1995). If the moving party has carried its burden under Rule 56(c), the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In so doing, the nonmoving party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. Anderson, 477 U.S. at 248–49, 106 S. Ct. at 2510; Catawba Indian Tribe, 978 F.2d at 1339. In other words, the nonmoving party must show "more than . . . some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of its position is insufficient to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); Catawba Indian Tribe, 978 F.2d at 1339. There can be "no genuine issue as to any material fact" if the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case," since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); accord White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 101 (4th

6

Cir. 1987). As a result, the Court will only enter summary judgment in favor of the moving party when "'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.'" Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994) (quoting Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)). With this standard in mind, the Court now turns to the merits of the Plaintiffs' claim to determine if summary judgment in favor of the Defendant is proper.

III. ANALYSIS

The North Carolina Supreme Court has held that, ordinarily, shareholders, or creditors of a corporation, or guarantors of a corporation's debts, may not pursue individual actions to recover damages for injuries to the corporation. Barger v. McCoy Hillard & Parks, 346 N.C. 650, 661, 488 S.E.2d 215, 221 (1997). However, individual actions may be brought if the guarantor can show either: (1) that the wrongdoer owed him a special duty; or (2) that the injury suffered by the guarantor is personal to him and distinct from the injury sustained by the corporation itself. Id. Unless Plaintiffs can satisfy one of these exceptions to the general rule, Plaintiffs may not pursue an individual action against Alcon.

First, Defendant argues that Plaintiffs have failed to allege and prove that the Defendant owed a special duty to the Plaintiffs. "[T]he existence of a special duty may be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as guarantors and was separate and distinct from the duty defendants owed the corporation." Id.

7

A special duty has been found where, "the actual actions of a party induced an individual to become a shareholder; when a party violated its fiduciary duty to the shareholder; when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation."[2] Barger, 346 N.C. at 659, 488 S.E.2d at 220. Plaintiffs in the present case have not produced any evidence to establish that Alcon induced the Plaintiffs to become guarantors for EBW, that there was a fiduciary relationship between Alcon and the Plaintiffs, that Alcon was ever engaged in any business dealings with the Plaintiffs apart from their role as shareholders of EBW, or that Alcon ever advised the Plaintiffs independently of EBW. Consequently, the Court concludes that there are simply no factual allegations to support a finding that Defendant owed a special duty to the Plaintiffs as shareholders or guarantors of EBW's corporate debts and obligations.

Next, Defendant argues that Plaintiffs have failed to allege and prove that they suffered an injury separate and distinct from the corporation. "An injury is peculiar or personal to the shareholder if 'a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation." Id. Plaintiffs contend that they are not pursuing damages for injuries to the corporation, but rather, separate and distinct damages for injuries to them as guarantors. In support of their argument, Plaintiffs stated that "both U.S. Bank and Fleet were paid off on behalf of EBW Laser . . . EBW Laser had no funds and the

---

[2] The North Carolina Supreme Court applies the same rules for establishing a special duty when plaintiffs are guarantors as when plaintiffs are shareholders. Barger, 346 N.C. at 661, 488 S.E.2d at 221.

burden, therefore, fell upon both Plaintiffs who had personally guaranteed both notes." (Def.'s Ex. M, p. 3) However, instead of personally paying EBW's obligations to Fleet and U.S. Bank, Plaintiffs created another corporation, NSite, which Plaintiffs now own and operate and for which the Plaintiffs serve as guarantors. NSite, through a loan obtained from FNB, is paying the original amounts owed to Fleet and U.S. Bank. Summary judgment evidence conclusively establishes that NSite has made every payment due to FNB for repayment of EBW's debts to Fleet and U.S. Bank. Importantly, regardless of how Plaintiffs have financed repayment of EBW's debts to Fleet and U.S. Bank, the "burden" the Plaintiffs have incurred was a direct result of their decision to personally guarantee EBW's corporate debts and obligations. Consequential damages incurred as a result of personally guaranteeing corporate debts do not constitute a separate and distinct injury from that suffered by the corporation. Barger, 346 N.C. at 661, 488 S.E.2d at 221.

Finally, Plaintiffs contend that they have suffered damages of over $1.5 million in excess of EBW's obligation to Fleet and U.S. Bank, and that such damages constitute a separate and distinct injury. In support of this argument, Plaintiffs contend that as part of the loan NSite obtained from FNB to make the payments owed to Fleet and U.S. Bank, Plaintiffs agreed to indemnify NSite for any extra fees incurred and to pay or cause to be paid any additional funds required. Plaintiffs maintain that these excess fees and costs constitute their claim for approximately $1.5 million in damages. However, Plaintiffs have produced no evidence that they have personally paid any of the alleged extra fees or additional costs the loan agreement with

9

FNB might anticipate. The potential additional costs Plaintiffs might incur in excess of the amounts due to Fleet and U.S. Bank as a result of serving as personal guarantors for NSite are speculative at best and do not constitute any actual injury to Plaintiffs. All of the evidence before the Court establishes that Plaintiffs are in the same position now as they were before Fleet and U.S. Bank demanded payment in full for satisfaction of EBW's debts: Plaintiffs continue to serve as personal guarantors of corporate debt. As such, Plaintiffs have produced no evidence to support a finding that they have suffered an injury separate and distinct from that of EBW, and Plaintiffs' claims are in essence claims which should have been brought by EBW. EBW, however, has waived any and all claims against Defendant as a result of a settlement agreement. Because as a matter of the applicable North Carolina law, guarantors of a corporation's debts may not pursue individual actions to recover damages for injuries to the corporation, and because Plaintiffs have failed to produce evidence that would support a finding that they have satisfied one of the exceptions to this rule, Plaintiffs are barred as a matter of law from pursuing this action.[3] Therefore, Defendant is entitled to summary judgment as a matter of law. Accordingly, Plaintiffs' claim for tortious interference with their contractual relations with Fleet and U.S. Bank must be dismissed and summary judgment for the Defendant will be granted.

---

[3] Because the Court has determined that Plaintiffs may not bring a claim in their individual capacities as personal guarantors of EBW's debt, the Court need not determine whether Plaintiffs have satisfied the substantive elements of a cause of action for tortious interference with a contract.

IV. CONCLUSION

For the reasons discussed above, the Court concludes that Defendant's Motion for Summary Judgment [Document #43] shall be GRANTED, and Plaintiffs' only remaining claim, tortious interference with a contract, is DISMISSED WITH PREJUDICE.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This the 19th day of December, 2007.

                                                                                                 */s/ James A. Beaty, Jr.*
                                                                                                 United States District Court Judge